IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NVR, Inc.,<br><br>Defendant. | Hon. Joseph H. Rodriguez<br><br>Civil Action No. 17-04346<br><br>**OPINION** |

This case is before the Court on Defendant NVR, Inc.'s Motion to Terminate Consent Decree [Dkt. No. 9]. The Court has considered the parties' written submissions pursuant to Fed. R. Civ. P. 78 (b). For the reasons stated below, the Court will grant NVR, Inc.'s Motion to Terminate Consent Decree [Dkt. No. 9].

      I.  Background

**A. Factual and Procedural History**

The United States of America (the "United States" or the "Government") commenced this action against NVR, Inc. ("NVR") on behalf of the United States Environmental Protection Agency ("EPA") seeking injunctive relief and civil penalties for violations of the Clean Water Act ("CWA"). [Dkt. No. 1]. NVR, doing business as Ryan Homes in over ten states, constructs residential homes. (Id. ¶¶ 1, 7, 8). The United States alleged that NVR discharged storm water into waters of the United States without obtaining the required permits in violation of the CWA Section 301, 33 U.S.C. § 1311, at a number of its New Jersey and New York construction sites. (See generally Id.). The

1

parties settled the dispute and executed a Consent Decree (the "Consent Decree or "Decree"), which this Court granted and entered on September 7, 2017. [Dkt. No. 5]. NVR now moves to terminate the Consent Decree, providing that it has complied with the Decree and "satisfactorily" completed the requirements for termination. [Dkt. No. 9-1, p. 5]. The Government opposes NVR's Motion "because NVR materially failed to comply with the decree for 'a minimum of' 30 months." [Dkt. No. 10, p.3]. Specifically, it contends that NVR failed: (1) to obtain CWA permits prior to commencing construction activity in numerous building lots and locations; and (2) to develop an effective compliance program.

### B. The Clean Water Act

The purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C.A. § 1251. In accordance with this objective, the CWA makes unlawful, "the discharge of any pollutant by any person" unless it is authorized by the Act. 33 U.S.C.A. § 1311(a). The act authorizes such discharge when done in compliance with National Pollutant Discharge Elimination System ("NPDES") permits. Id. § 1362(12). When authorized by the EPA, States may also issue their own permits for discharge into navigable waters within their jurisdiction. 33 U.S.C. § 1342(b).

Under CWA Section 402(p), the discharge of storm water associated with industrial activity requires a permit. 33 U.S.C. § 1342(p). Storm water discharge with industrial activity "means the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant"—including:

Construction activity including clearing, grading and excavation, except

>operations that result in the disturbance of less than five acres of total land area. Construction activity also includes the disturbance of less than five acres of total land area that is a part of a larger common plan of development or sale if the larger common plan will ultimately disturb five acres or more . . . .

C.F.R. § 122.26 (b)(14), (b)(14)(x).

The CWA imposes strict liability for violations of NPDES permits. 33 U.S.C. §§ 1311(a), 1319(d). The United States can initiate civil enforcement actions against persons for these violations on behalf of the EPA. Id. § 1319.

## II.   Analysis

"A consent decree is a hybrid of a contract and a court order." Holland v. New Jersey Dep't of Corr., 246 F.3d 267, 277 (3d Cir. 2001). Parties enter into consent decrees "after careful negotiation has produced agreement on their precise terms. . . . Naturally, the agreement reached normally embodies a compromise; . . . [and] the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." United States v. Armour & Co., 402 U.S. 673, 681–82, 91 S. Ct. 1752, 1757, 29 L. Ed. 2d 256 (1971). The Third Circuit has found that "the principles of local law guiding the interpretation of contracts" govern the interpretation of consent decrees. Kean v. Adler, 65 F. App'x 408, 412 (3d Cir. 2003). When interpreting a consent decree, the Court must first "determine whether its terms unambiguously cover the dispute in question." United States v. State of New Jersey, 194 F.3d 426, 430 (3d Cir. 1999). The terms here, unambiguously cover this dispute.

### A. Relevant Terms of the Consent Decree

Generally, the Decree executed by the parties "requires NVR to implement a comprehensive, corporate-wide program to improve compliance with federal laws that

3

pertain to controlling storm water pollution." [Dkt. No. 4-1, p. 4]. More specifically, the Consent Decree provides a "Compliance Program" that NVR, "its successors and assigns, as well as any subsidiaries of NVR that engage in Construction Activity" ("Builder") agreed to fulfil for 30 months." (Consent Decree, p. 6).

In sum, the Compliance Program required NVR to comply with CWA Storm Water Requirements, have at least one Site Storm Water Compliance Representative for each sight, one Division Storm Water Compliance Representative for each site, provide notice of a list of its sites to the EPA, obtain permits prior to commencing builder construction activity at a site, prepare records, conduct inspections and reviews, install and maintain all required stormwater controls and practices for Builder construction activity, provide site oversight and review, submit three (3) national compliance summary reports, and provide a stormwater training program.

The Consent Decree provides the following requirements for termination of the Decree:

> (i) Builder has complied with the requirements of Section IV of this Consent Decree (Builder's Compliance Program) for a minimum of two and half years (30 months) following the Date of Entry ("30 month Anniversary"), (ii) Builder has submitted a minimum of three National Compliance Summary Reports, (iii) Builder has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, and (iv) Builder has no unresolved matters subject to dispute resolution pursuant to Section IX (Dispute Resolution).

(Id. at ¶ 71).

Pursuant to the Decree, the Builder's Compliance Program ends on the 30 month Anniversary—March 7, 2020—unless "otherwise ordered by the Court under Paragraph 72.e." (Id. at ¶ 71). Paragraph 72. e. provides that the Decree's requirements end on the 30th Anniversary, "unless the Court determines, in an order to deny a motion to

4

terminate by Builder, that Builder materially failed to meet the requirements for termination under Paragraph 71 of this Decree." (Id. at ¶72(e)). Thus, the Decree governs its termination, and the question before the Court is whether NVR materially failed to comply with the Decree.

**B.     NVR's Compliance with the Decree**

It is undisputed that, for a period of time, NVR was operating 6 of its construction sites without first obtaining the proper permit,[1] in violation of the compliance program—under which NVR was required, [p]rior to commencing Builder Construction Activity at a Site, [to] obtain coverage required under the Applicable Permit. . . ." (Consent Decree at ¶7(b)). The Government argues that "[b]cause obtaining a permit is a fundamental objective of the CWA and the Decree, the significance of failing to obtain a permit prior to commencing construction activity at dozens of locations for months at a time demonstrates that NVR materially failed to comply with the Decree for 30 months as required for termination." [Dkt. No. 10 at 10 of 19].

To be sure, allegations that NVR failed to obtain NPDES permits under the CWA led to the entry of this Decree, and "relevant statutes and regulations may sometimes be used to shed light on the terms of a consent decree." McDowell v. Philadelphia Hous. Auth. (PHA), 423 F.3d 233, 239 (3d Cir. 2005) (citations omitted). Generally, however, "a court should confine its interpretation to the four corners of the decree and not try to divine its meaning from speculation about the purposes of the parties or the background legal regime." McDowell v. Philadelphia Hous. Auth. (PHA), 423 F.3d 233, 239 (3d Cir. 2005). Thus, whether obtaining a permit is a fundamental objective of the CWA is not

---

[1] [Dkt. No. 9-1, p. 13; Dkt. No. 10, p. 11].

5

conclusive of whether failure to obtain a permit is a material failure of the Decree.

NVR, argues that its "errors in permit coverage comprise not only a small portion of NVR's permitted locations, but are also a de minimis piece of NVR's overall compliance efforts." [Dkt. No. 9-1, p. 16 of 22]. During the 30-month term of the Decree, NVR required 7,657 stormwater permits. In year one, NVR mistakenly failed to obtain 6 permits out of the 3,910 permits required.[2] Thus, NVR, provides that the missing permits in year one represent only .15% of the total number of permits NVR required for that year. This non-compliance lasted a total of 626 days during year one of the Decree. [Dkt. No. 9-1, p. 18 of 22; Dkt. No. 10, p. 11 of 19]. NVR, however, argues that this missing permit coverage represents less than 1% of over 298,000 days of permit coverage required. During the time of missing permit coverage, NVR claims that it operated these sites as though a permit were properly in place.[3]

The Government does not dispute that "some violations under the Decree were not material[,]" including certain violations regarding permit coverage. [Dkt. No. 10, p. 17 of 19]. Indeed, the Government does not take issue with NVR's failure to obtain 2 permits in year two, 1 permit in year three, or the failure to complete certain inspections. But it argues that "the correct and fair measure of materiality depends upon an absolute measure of the underlying failure, not a comparative or relative measure." (Id. at 4 of 19). The Government, however, cites no authority to support its proposition.

---

[2] The Government claims that NVR failed to obtain CWA permits for 92 "lots," whereas NVR describes its failure in terms of 6 "sites." NVR explains "At some locations, NVR obtains a permit to cover multiple lots in a subdivision or community. At others, it must obtain an individual permit for each lot."[Dkt. No. 12, p. 12]. NVR claims that only one permit was required for each of the 6 sites with reported issues. (Id.)
[3] NVR further outlines the operation of the relevant sites in detail in its briefing. [Dkt. No. 9-1, p. 17 16-17 of 22].

Under New Jersey law "[w]here a contract calls for a series of acts over a long term, a breach will be 'material' if it tends to 'defeat the purpose of the contract.'" New Jersey, Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc., 264 F. Supp. 2d 165, 179 (D.N.J. 2003) (quoting Medivox Prods., Inc. v. Hoffmann-LaRoche, Inc., 256 A.2d 803, 809 (N.J. Law. Div. 1969)). There is no evidence that NVR's failure to comply with the permitting requirement in Year 1 defeats the Decree's purpose. Additionally, both parties recognize that, under the Second Restatement:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a)   the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b)   the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c)   the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d)   the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e)   the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981); see also Scottsdale Ins. Co. v. Weiner, No. CIV.03-3857(JBS/JS), 2010 WL 445649, at *4 (D.N.J. Feb. 1, 2010); Roach v. BM Motoring, LLC, 155 A.3d 985, 992 (N.J. 2017). These factors are "applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." Restatement (Second) of Contracts § 241 (1981).

As to the first factor—the loss of benefit to the injured party—"all relevant circumstances must be considered." Id. Here, the Government provides that NVR's breach deprives it of its bargain for 30 months of compliance under the Decree. That is not to say that the benefit reasonably expected from the parties' exchange was perfect compliance. Indeed, the parties' contemplated NVR's failure to meet Decree requirements. [See Dkt. No. 4-1, p. 6 ("If NVR fails to meet the requirements set forth in the Decree, then NVR is subject to stipulated penalties.")]. According to the Government, however, the 30-month period is particularly important, given that NVR builds thousands of homes a year.

Here, NVR's non-compliance is <u>limited</u> to the first 12 months of the 30-month Decree Term, and concerned only a small number, and overall percentage, of its construction sites. Notably, NVR recognized its non-compliance, self-reported its failures, and represented that any non-compliance was not in bad faith, but mere oversight which it sought to promptly correct. The Government even acknowledges that some of the non-compliance stemmed from issues <u>before</u> the Decree took effect. [Dkt. No. 10, p. 13 of 19]. Therefore, while the Court agrees that a failure to comply will produce some loss of benefit to the Government, in light of the surrounding circumstances, any loss to the government as a result of NVR's non-compliance was minimal.

As to the extent to which the government can be adequately compensated for the loss of its benefit, the United States argues that it "can only be compensated . . . by requiring the Consent Decree to remain in effect until NVR can demonstrate that it has not materially failed to comply for 30 months." [Dkt. No. 10, p. 13]. The Court cannot find that this in the <u>only</u> compensation for its loss when under the Decree, NVR is

subject to stipulated penalties for a failure to meet requirements. In fact, NVR was required to pay the government a fine of $250,000 for its noncompliance—a fee directly contemplated and agreed to by the parties, as a consequence of NVR's actions. "NVR declined to pursue formal dispute resolution, and agreed to pay the $250,000 stipulated penalty. . . ." [Dkt. No. 10,p. 14 of 19].

The Government contends that the relative size of that stipulated penalty for NVR's failure to obtain a permit pursuant to the Decree shows the seriousness of the violation. [Dkt. No. 10, p. 14 of 19]. The penalty for failure to obtain a permit is 58% of the original civil penalty. While the penalties "set forth in the Decree reflect the seriousness of the violation," the amount of the stipulated penalty alone, does not illustrate the materiality of the non-compliance. [Dkt. No. 4, p. 10]. Rather, "[t]he fact that the injured party already has some security for the other party's performance argues against a determination that the failure is material." Restatement (Second) of Contracts § 241 (1981).

Next, the Court looks to the extent that NVR will suffer forfeiture. The government submits that NVR will not suffer forfeiture, as the continuance of the Decree would only require additional monitoring and enforcement. Specifically, the Government seeks to require NVR to submit an additional National Compliance Summary Report, to document its continued compliance. NVR's reporting and monitoring requirements are a small burden considering that NVR, at this point, claims to have an effective Compliance Program in place. NVR, however, argues that if the Court extends the term of the Decree it would suffer forfeiture because it "would be deprived of the 30-month term that was negotiated by the parties in the Decree." The Government does not propose NVR begin a new 30-month term of compliance under

9

the Decree; instead, it proposes a new termination date, requiring approximately eleven (11) additional months of compliance. Thus, NVR would not be deprived of the full 30-month term, but would likely suffer some forfeiture, as there were numerous requirements under the Decree that NVR followed for its full term. As an additional year of compliance is relative to NVR's violations, which mostly occurred within the first year of the Decree, that forfeiture is minor.

As to factor four, the Court considers the likelihood that NVR will cure his failure, taking account of all the circumstances including any reasonable assurances. "The likelihood that the failure will be cured is [] a significant circumstance in determining whether [non-compliance] is material." Restatement (Second) of Contracts § 241 (1981). Here, the parties agree that NVR has already demonstrated progress and intent to cure its failures. NVR not only took action to obtain permits for those sites it realized were un-covered, but provides a list of prompt corrective action taken to address the underlying issues in its first year under the Decree. That corrective action, as the Government concedes, led to "significant improvements in its compliance during the Decree's second and third compliance reporting cycles." [Dkt. No. 9-1, pp. 14-15, p. 14 n.5; Dkt. No. 10, p 16].

Still, the Government contends that NVR's failure to obtain permits demonstrates its <u>initial</u> compliance procedures were inadequate. Yet, its compliance in the remaining 18 months is evidence that the additional compliance procedures put in place, are effective. "NVR conceded that additional compliance measures and systems were required when it adopted at least five additional corporate-wide procedures to ensure that similar failures would not be repeated." [Dkt. No. 10, p. 13 of 19]. Thus, there is a strong likelihood NVR will cure its failures, and the expectation of a cure is

10

reasonably secure. In such a case, "in spite of the failure, there is less reason to conclude that the failure is material." Restatement (Second) of Contracts § 241 (1981).

Finally, NVR's behavior comports with standards of good faith and fair dealing. The Government does not dispute this fact, but contends that this factor is irrelevant because the CWA is a strict liability statute. The issue before the Court, however, concerns NVR's compliance under the Consent Decree, not the CWA. While good faith alone is not conclusive of whether the failures of NVR are material, "[t]he extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing is, . . . a significant circumstance in determining whether the failure is material." Restatement (Second) of Contracts § 241 (1981).

Here, consideration of the significant circumstances above indicate that NVR's failure to obtain permits for certain sites, was not a material failure to comply with the Decree. The Decree set forth numerous requirements that NVR had to follow, which furthered the objective to have NVR "implement a comprehensive, corporate-wide program to improve compliance with federal laws that pertain to controlling storm water pollution." [Dkt. No. 4-1, p. 4]. NVR certified how it followed all of these other requirements, despite its failure to obtain certain permits.

In sum, the Court finds that the loss to the Government for any non-compliance, and any forfeiture to NVR if compliance is extended, is minimal. However, the Court finds significant that (1) there is a strong likelihood that the failure will be cured, and in fact, has already been cured; (2) NVR acted in good faith in following permit requirements and self-reporting any issues; (3) NVR implemented and followed the Decree's other requirements; and (4) has paid stipulated penalties for its non-compliance. Together, these factors provide that NVR's failures were not material.

11

Therefore, NVR has satisfactorily complied with the Consent Decree's requirements for termination.

## I. Conclusion

For the forgoing reasons, the Court will grant NVR's Motion to Terminate the Consent Decree.

An appropriate Order will be entered.

Dated: December 8, 2020

                                                /s/ Joseph H. Rodriguez

                                                JOSEPH H. RODRIGUEZ, USDJ